MACKENZIE & ALBRITTON LLP
MARK L. MOSLEY, State Bar No. 136449
MELANIE SENGUPTA, State Bar No. 244615
Email: mmosleyesq@gmail.com
       m.sengupta@mallp.com
155 Sansome Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 288-4000
Facsimile: (415) 288-4010

Attorneys for Plaintiff GTE MOBILNET OF
CALIFORNIA Limited Partnership,
a California limited partnership d/b/a
VERIZON WIRELESS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership d/b/a VERIZON WIRELESS,<br><br>               Plaintiff,<br><br>   vs.<br><br>CARMEL-BY-THE-SEA,<br><br>               Defendant. | Case No. 5:22-cv-347<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION; REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)** |

      Plaintiff GTE Mobilnet of California Limited Partnership, doing business as Verizon Wireless ("Verizon Wireless"), brings this complaint against defendant Carmel-by-the-Sea ("Carmel" or the "City") and alleges as follows:

**I.    INTRODUCTION**

      1.    The City violated the Telecommunications Act of 1996 (the "TCA") by failing to

act, within a reasonable period of time, on Verizon Wireless's application to place, modify, or construct a personal wireless service facility within the City. Under 47 U.S.C. section 332(c)(7)(B)(ii), the City must "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time." The Federal Communications Commission ("FCC") issued an order establishing specific, presumptively reasonable timeframes under which a municipality must act on such requests to comply with Section 332(c)(7)(B)(ii). *In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14004-14005, ¶ 32 (Nov. 18, 2009) (the "*Shot Clock Ruling*"). In this case, the applicable "shot clock" deadline expired on December 17, 2021. The City has failed to act on Verizon Wireless's application, and has thus violated the TCA.

2. The TCA also requires that any denial of an application to install or modify a wireless facility "*shall be in writing* and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

3. Verizon Wireless filed an application with the City (the "Carmelo Application") seeking approval to replace an existing 39-foot, 10-inch wood utility pole with a new wood pole and a small cell personal wireless service facility on Carmelo Street between Eighth and Ninth Avenues in Carmel-by-the-Sea, California (the "Proposed Facility"). Verizon Wireless needs the Proposed Facility to fill a gap in wireless service in the south Carmel area, to meet the increased customer demand for voice and data usage, and to avoid compromising network accessibility and reliability.

4. The City reviewed the Carmelo Application at three public hearings, but has never taken final action on the Carmelo Application. The Planning Commission held two hearings on the Carmelo Application, and then City Council held a third on December 7, 2021. While the City Council voted to deny the Carmelo Application on December 7, 2021, it has never issued a written decision to Verizon Wireless.

5. The City's failure to act also constitutes a breach of a settlement agreement with Verizon Wireless. Under the settlement agreement, the City had a duty to take final action "in

2
COMPLAINT FOR DEC. JUDGMENT & INJUNCTION; REQ. FOR EXPEDITED REVIEW

strict compliance with FCC shot clock periods." The agreement provides that the remedy for this breach is that the Carmelo Application "shall be deemed approved by operation of law."

6. To redress these violations, Verizon Wireless seeks declaratory and injunctive relief deeming the Carmelo Application approved and directing the City to issue all necessary approvals for Verizon Wireless to build the Proposed Facility.

7. Verizon Wireless also respectfully requests expedited judicial review of these claims, including an expedited schedule for briefing and argument of a motion for summary judgment. 47 U.S.C. § 332(c)(7)(B)(v).

## II. JURISDICTION AND VENUE

8. This case arises under the Constitution and laws of the United States, including the Supremacy Clause, U.S. Const. Article VI, Clause 2, and the TCA.

9. The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202. The Court also has the authority to grant injunctive relief. *See, e.g., Brehmer v. Planning Bd. of Town of Wellfleet*, 238 F.3d 117, 121 (1st Cir. 2001) ["award of injunctive relief, rather than a remand for further proceedings, best fulfills this statutory goal"]; *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1222 (11th Cir. 2002) [holding that "an injunction ordering issuance of a permit is an appropriate remedy for a violation" of the TCA].

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the City is located in this District and the acts or omissions giving rise to this action occurred in this District.

11. The court has supplemental jurisdiction over claims arising under California state law pursuant to 28 U.S.C. § 1367, in that the state law claims are so related to the claims over which the Court has original jurisdiction that they are part of the same case or controversy under Article III of the United States Constitution.

## III. INTRADISTRICT ASSIGNMENT

12. Assignment to the San Jose Division of this Court is appropriate pursuant to Local Rule 3-2(e) because all or a substantial part of the events or omissions which give rise to the claims

asserted herein occurred in the County of Monterey.

**IV.    THE PARTIES**

13. Plaintiff GTE Mobilnet of California Limited Partnership, a California limited partnership doing business as Verizon Wireless, is the local affiliate of a nation-wide provider of wireless telecommunications services and is referred to herein as "Verizon Wireless."

14. Verizon Wireless is a "communications common carrier" and a "telecommunications carrier" that provides "personal wireless services," and "interstate and intrastate telecommunications services" as those terms are defined and used in the TCA and the rules, regulations and orders promulgated by the FCC pursuant to this statutory scheme.

15. Verizon Wireless is licensed by the FCC to provide interstate and intrastate telecommunications services and personal wireless services via radio communication nationwide, including within the City.

16. Defendant Carmel-by-the-Sea is a general law city, duly constituted under the Constitution and laws of the State of California.

**V.    EVOLVING CELLULAR TECHNOLOGY AND NEED FOR WIRELESS FACILITIES**

17. Modern wireless communications require networks of antennas and supporting radio equipment to provide reliable service throughout a geographic area. Demand for wireless services is growing exponentially. Wireless carriers must install new cell sites and upgrade existing ones to provide adequate network capacity to meet that demand and to provide newer, more advanced wireless services. One key solution is "small cells." In contrast to traditional cell towers (sometimes referred to as "macro" facilities), small cells are a series of relatively small, low-powered facilities that attach to infrastructure like streetlight poles to provide additional signal coverage or capacity. The Proposed Facility is a small cell.

**VI.    REGULATORY FRAMEWORK**

    **A.    Federal Preemption of Local Roadblocks to Competition**

18. With the passage of the TCA, Congress "created a new telecommunications regime

designed to foster competition in local telephone markets." *Verizon Maryland, Inc. v. Pub. Service Comm'n of Md.*, 535 U.S. 635, 638 (2002).  To ensure that its pro-competitive national policy would not be frustrated, Congress imposed certain limitations on the traditional zoning authority of state and local governments to regulate the location, construction, and modification of such facilities.  *City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013).

19. Two of those provisions are relevant here.  First, the TCA requires that a state or local government must "act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time* after the request is duly filed . . . ." (47 U.S.C. § 332(c)(7)(B)(ii)) (emphasis added).  Second, it requires that any denial of an application to install or modify a wireless facility "*shall be in writing* and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

20. The TCA's "reasonable period of time" provision addressed the fact that wireless providers often faced lengthy and unreasonable delays on siting applications, which impeded the deployment of advanced wireless services and capacity, including the provision of emergency services dependent on such capacity.  To clarify the meaning of a "reasonable period of time," the FCC issued the *Shot Clock Ruling*, which established a rebuttable presumption that a "reasonable period of time" is 90 days to process a "collocation" application and 150 days to process all other applications.  *Shot Clock Ruling*, ¶¶ 32, 45.

21. In *City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013), the United States Supreme Court upheld both the statutory authority of the FCC to interpret the "reasonable period of time" provision, and the reasonableness of the presumptive 90-day and 150-day deadlines.  The FCC later codified these deadlines, along with shorter "shot clocks" for small wireless facilities and certain types of modifications, at 47 C.F.R. Section 1.6003(c).

22. One of the *Shot Clock Ruling*'s purposes was to "clarify when an adversely affected service provider may take a dilatory State or local government to court," i.e., to clarify when the 30-day limitations period under the TCA for a "failure to act" begins to run.  The FCC "expect[s] that this certainty will enable personal wireless service providers more vigorously to enforce the

5

statutory mandate against unreasonable delay that impedes the deployment of services that benefit the public." *Shot Clock Ruling*, ¶ 37.

23. Under the *Shot Clock Ruling*, the presumptive deadlines of 90 days (for collocation facilities) and 150 days (for new towers) will control unless the State or local government rebuts the presumption that such deadlines are reasonable. *Shot Clock Ruling*, ¶ 32.

24. Otherwise, the presumptive 90-day or 150-day deadline may be extended or tolled under only two circumstances. First, if the State or local government makes a request for additional information within 30 days after the application is filed, the time spent by the project applicant responding to the request does not count toward the 90 or 150-day period. *Shot Clock Ruling*, ¶ 53; 47 C.F.R. § 1.6003(d)(2). So if the state or local government entity makes a timely and appropriate request for additional information (within 30 days of the date of filing), the "shot clock" stops running on the date of such request and does not start running again until the requested additional information has been submitted. *Shot Clock Ruling*, ¶ 52; 47 C.F.R. § 1.6003(d)(2).

25. Second, the *Shot Clock Ruling* provides that the deadlines may be extended by "mutual consent of the personal wireless service provider and the State or local government, and that in such instances, the commencement of the 30-day period for filing of suit will be tolled." Shot Clock Ruling, ¶ 49.

26. The *Shot Clock Ruling* was intended to "ensure timely State and local government action and . . . . [that municipalities] will have a strong incentive to resolve each application within the timeframe defined as reasonable, or they will risk issuance of an injunction granting the application." *Shot Clock Ruling*, ¶ 38; *see also New Cingular Wireless PCS, LLC v. Town of Stoddard*, 853 F.Supp.2d 198, 203-204 (D.N.H. 2012) (finding that "the *Shot Clock Ruling*'s 150–day deadline for the processing of wireless communications facility siting applications encompasses not only the time it takes a local government to reach an initial decision on an application, but the time it takes to complete the rehearing process. . . . as well").

27. Consequently, if a city fails to act within a reasonable period of time on an application by a carrier to place, modify or construct personal wireless service facilities, it violates

6
COMPLAINT FOR DEC. JUDGMENT & INJUNCTION; REQ. FOR EXPEDITED REVIEW

47 U.S.C. Section 332(c)(7)(B)(ii). This failure to act is not cured, or the Shot Clock tolled, by an interim decision from the City that is still appealable to another City department. The City must conclude *all* of its review processes and appeals by these deadlines so that there is a final decision. *New Cingular Wireless PCS, LLC, supra,* 853 F.Supp.2d at 203-204.

## VII.  THE CITY VIOLATED THE FCC'S SHOT CLOCK

28. Verizon Wireless started working with the City in 2017 to deploy small cell facilities. Verizon Wireless initially applied for five small cell wireless facilities in the residential area of Carmel (the "Original Applications"). The City denied all five of the Original Applications, based primarily on their location within residential areas.

29. To accommodate the City's concerns, Verizon Wireless worked with the City to redesign the network and submit new applications for alternative sites through an agreement dated November 2, 2020 (the "Settlement Agreement").

30. One such alternative site was the Proposed Facility described in the Carmelo Application.

31. On April 7, 2021, Verizon Wireless submitted the Carmelo Application, which proposed to replace an existing 39-foot, 10-inch wood utility pole with a new wood pole and wireless facility. The proposal also included ground cabinets to enclose batteries that provide continued service during emergencies, pursuant to the City's request in the Settlement Agreement. The Carmelo Application constituted a "request for authorization to place, construct or modify personal wireless service facilities" within the meaning of 47 U.S.C. § 332(c)(7)(B)(ii).

32. After two Planning Commission hearings on August 11, 2021, and September 29, 2021, the Planning Commission denied the Carmelo Application. The denial was not based on substantial evidence.

33. Verizon Wireless appealed the Planning Commission's decision to the City Council and agreed with the City to toll the FCC's shot clock deadline on the Carmelo Application to December 17, 2021.

34. Prior to the City Council appeal hearing, in an effort to make the Carmelo

Application more palatable to the City, Verizon Wireless decreased the size of the proposed Carmelo facility by substituting a shorter antenna and eliminating the ground cabinet options for batteries requested by the City Council in the Settlement Agreement.

35. At the conclusion of the public hearing, the City Council voted to deny the Carmelo Application. The City has yet to issue a written denial, as required by the TCA.

## VIII. GROUNDS FOR INJUNCTIVE RELIEF

36. As a result of the City's actions (or lack thereof), Verizon Wireless has been, and will continue to be, damaged and irreparably harmed absent the relief requested herein. The harm caused by the City's unlawful actions includes, but is not limited to, impairment of Verizon Wireless's (a) ability to provide its customers in the City with the high-quality, reliable wireless service they desire and rightfully expect; (b) ability to compete with other providers of telecommunications services; (c) full use of its existing licenses and business investments; and (d) good will and business reputation.

37. The harm that the City's actions have caused Verizon Wireless is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

38. Moreover, the public interest in promoting competition, lower prices, and rapid deployment of new technology in the telecommunications arena – the express goals of the TCA – has been irreparably harmed and will continue to be irreparably harmed by the City's unlawful actions. Verizon Wireless's present and future customers, as well as the public at large, are significantly prejudiced by the City's unlawful conduct.

39. In addition, wireless telecommunications are an important component of emergency response systems and provide a vital alternative to traditional landlines during fires, earthquakes, and other natural and man-made disasters. By preventing Verizon Wireless from installing equipment needed to provide improved and more reliable service, the City's unlawful actions are causing irreparable harm to the public interest in reliable emergency communications.

40. In contrast to the immediate and irreparable injury being suffered by Verizon

Wireless, its customers, and the public interest, the City will suffer no injury if the Court issues the requested declaratory and injunctive relief. The placement of small wireless facilities on existing utility poles will have no significant visual or other impacts.

## IX. GROUNDS FOR DECLARATORY RELIEF

41. A present, actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties. Verizon Wireless contends that the City's failure to act violates both the TCA and the Settlement Agreement. On information and belief, the City denies these allegations.

42. Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Verizon Wireless's rights and the City's duties and authority.

### COUNT ONE

**(Violation of 47 U.S.C. Sections 332(c)(7)(B)(ii))**
**Shot Clock Violation on Carmelo Application**

43. Verizon Wireless re-alleges and incorporates by reference all preceding paragraphs as if fully restated herein.

44. The Carmelo Application, as originally submitted, was subject to the *Shot Clock Ruling* 150-day clock.

45. The Carmelo Application was tolled because the City requested additional information. Verizon Wireless submitted its application on April 7, 2021, the City requested additional information on April 30, 2021, and when Verizon Wireless provided that information in mid-July 2021, the shot clock was extended to November 18, 2021.

46. To provide the City additional time for review and to avoid any ambiguity regarding the shot clock deadline, the parties agreed in writing to extend the shot clock through December 17, 2021. This became the outside deadline for the City to take "final action" on the Carmelo Application, i.e., a *written decision, communicated to the applicant*. 47 U.S.C. § 332(c)(7)(B)(iii); *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 305 n. 4 (2015) ("The relevant 'final action' is the issuance of the written notice of denial . . . ."); *T Mobile Northeast LLC v. City of Wilmington, Del.*, 913 F.3d 311, 323 (3rd Cir. 2019) ("If the locality fails to meet that deadline by

9
COMPLAINT FOR DEC. JUDGMENT & INJUNCTION; REQ. FOR EXPEDITED REVIEW

not issuing a written decision before the shot clock expires, the wireless provider can bring a claim for a 'failure to act.'").

47. While the City voted to deny the application on December 7, 2021, it did not issue its decision in writing before the shot clock deadline expired on December 17, 2021. Indeed, it has still not issued a written denial as of the date of this complaint.

48. There are no unusual, extraordinary, or extenuating circumstances related to the Carmelo Application that would justify delay beyond the presumptive 150-day deadline for action, as extended by the circumstances described above.

49. The City failed to act within a reasonable period of time on Verizon Wireless's application to place, modify or construct personal wireless service facilities. The City's unreasonable delay violates Verizon Wireless's rights under 47 U.S.C. section 332(c)(7)(B)(ii), the *Shot Clock Ruling*, and the FCC's implementing regulations.

### COUNT TWO

**(Breach of Settlement Agreement)**
**Carmelo Application**

50. Verizon Wireless re-alleges and incorporates by reference all preceding paragraphs as if fully restated herein.

51. The Settlement Agreement specifies that the City will take final action "in strict compliance with FCC shot clock periods unless Verizon Wireless agrees to toll the shot clock." If the City "fails to take final action on the applications within the timeline specified," then the application "shall be deemed approved by operation of law." Settlement Agreement, § 3.

52. As established in Count One, the City failed to take timely final action. Consequently, the City has breached the Settlement Agreement, and Verizon Wireless is entitled to the necessary approvals to construct the Carmelo Site. Settlement Agreement, § 3.

53. The Settlement Agreement provides that in any lawsuit to enforce its provisions, the prevailing party shall be entitled to recover their attorneys' fees. § 13.

COMPLAINT FOR DEC. JUDGMENT & INJUNCTION; REQ. FOR EXPEDITED REVIEW

## X. REQUEST FOR EXPEDITED REVIEW

54. Verizon Wireless re-alleges and incorporates by reference all preceding paragraphs as if fully restated herein.

55. The TCA, 47 U.S.C. § 332(c)(7)(B)(v), provides that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

56. Verizon Wireless has been adversely affected by the City's failure to take final action on the Proposed Facility. Verizon Wireless respectfully requests a hearing and decision by the Court on an expedited basis as provided by the TCA.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Verizon Wireless respectfully requests that this Court enter judgment against the City as follows:

(i) For an Order and Judgment finding and declaring that the City failed to take final action on the Carmelo Application "within a reasonable period of time";

(ii) For an Order and Judgment finding and declaring that the City breached the Settlement Agreement by failing to act on the Carmelo Application within the FCC shot clock deadline, and therefore the Carmelo Application has been approved by operation of law;

(iii) For preliminary and permanent injunctive relief on all Counts directing the City to grant Verizon Wireless any and all authorizations or approvals necessary to construct the Carmelo Application;

(iv) For expedited review of the matters set forth in this complaint;

(v) For an order awarding Verizon Wireless the costs and disbursements incurred in connection with this action pursuant to 28 U.S.C. § 1920, in addition to attorney's fees incurred to enforce the Settlement Agreement as specified in Count Two; and

(vi) Granting such other relief as this Court considers just and proper.

Dated: January 18, 2022					MACKENZIE & ALBRITTON LLP

						/s/ Melanie Sengupta
						Mark L. Mosley
						Melanie Sengupta
						Attorneys for GTE Mobilnet of California, L.P.,
						d/b/a Verizon Wireless