1   GAIL A. KARISH, Bar No. 244264
    gail.karish@bbklaw.com
2   AVI W. RUTSCHMAN, Bar No. 298922
    avi.rutschman@bbklaw.com
3   BEST BEST & KRIEGER LLP
    300 South Grand Avenue
4   25th Floor
    Los Angeles, California 90071
5   Telephone:    (213) 617-8100
    Facsimile:    (213) 617-7480
6
7   Attorneys for Defendant
    CARMEL-BY-THE-SEA

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         SAN JOSE DIVISION
11

12  GTE MOBILNET OF CALIFORNIA          Case No. 5:22-CV-00347-NC
13  LIMITED PARTNERSHIP, a California
    limited partnership d/b/a VERIZON    **REQUEST FOR JUDICIAL NOTICE IN**
14  WIRELESS,                            **SUPPORT OF DEFENDANT**
                                         **CARMEL-BY-THE-SEA'S**
15              Plaintiff,               **SUPPLEMENTAL BRIEF IN**
                                         **SUPPORT OF ITS CONVERTED**
16       v.                              **MOTION FOR SUMMARY**
                                         **JUDGMENT**
17  CARMEL-BY-THE-SEA,
                                         [Filed concurrently herewith:
18              Defendant.               1.   Supplemental Brief in Support of
                                         Converted Motion for Summary Judgment;
19                                       and
                                         2.   Declaration of Avi W. Rutschman]
20
                                         Date:          June 22, 2022
21                                       Time:          1:00 p.m.
                                         Courtroom:     5
22                                       Judge:         Hon. Nathanael Cousins
                                         Trial Date:    Not Set
23                                       Action Filed:  January 18, 2022

24
25
26
27
                                                    5:22-CV-00347-NC
28                                         REQUEST FOR JUDICIAL NOTICE IN
                                          SUPPORT OF DEFENDANT CARMEL-BY-
                                            THE-SEA'S SUPPLEMENTAL BRIEF IN
    51312.00004\40148047.2                  SUPPORT OF ITS CONVERTED MOTION
                                                FOR SUMMARY JUDGMENT

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA

# REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rules of Evidence, Rule 201, Defendant Carmel-by-the-Sea hereby requests the Court take judicial notice of the following documents in support of Defendant's Supplemental Brief In Support of Its Converted Motion For Summary Judgment:

1.      City of Carmel-By-The-Sea City Council Staff Report dated October 6, 2020 and regarding Resolution 2020-071, a true and correct copy of which is attached as **Exhibit 1**.

2.      Resolution 2020-071 and the executed Verizon Small Cell Facilities Agreement (without exhibits), a true and correct copy of which is attached as **Exhibit 2**.

Judicial notice is appropriate pursuant to Federal Rule of Evidence 201(b), which provides that the Court may notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As to Exhibit A, staff reports are part of the public record and appropriate for judicial notice. <u>Jonna Corporation v. City of Sunnyvale, Ca.</u> Case No. 17-cv-00956-LHK, 2017 WL 2617983, at *4 (N.D. Cal. June 16, 2017). As to Exhibit B, the adoption of a resolution by a City Council is a fact for which judicial notice is appropriate. <u>Colony Cove Properties, LLC v. City of Carson</u>, 640 F.3d 948, 954 n.3 (9th Cir. 2011).

Dated: June 10, 2022                           BEST BEST & KRIEGER LLP


By:   /s/ Gail A. Karish
      GAIL A. KARISH
      AVI W. RUTSCHMAN

      Attorneys for Defendant
      CARMEL-BY-THE-SEA

BEST BEST & KRIEGER LLP

5:22-CV-00347-NC
REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF DEFENDANT CARMEL-BY-
THE-SEA'S SUPPLEMENTAL BRIEF IN
SUPPORT OF ITS CONVERTED MOTION
FOR SUMMARY JUDGMENT

-1-

51312.00004\40148047.2

EXHIBIT 1



# CITY OF CARMEL-BY-THE-SEA
# CITY COUNCIL
## Staff Report

**October 6, 2020**
**CONSENT AGENDA**

| | |
|---|---|
| **TO:** | Honorable Mayor and City Council Members |
| **SUBMITTED BY:** | Brian Pierik, City Attorney |
| **APPROVED BY:** | Chip Rerig, City Administrator |
| **SUBJECT:** | Resolution 2020-071 authorizing the City Administrator to execute an agreement regarding Verizon Wireless Small Cell Facilities |

## RECOMMENDATION:

Adopt Resolution 2020-071 authorizing the City Administrator to execute an agreement regarding Verizon Wireless Small Cell Facilities.

## BACKGROUND/SUMMARY:

This item presents for consideration by the Council an Agreement Regarding Verizon Wireless Small Cell Facilities (Attachment 2) and the Exhibits to the Agreement (Attachment 3).

On March 27, 2019, Verizon Wireless submitted applications for Design Review, Use Permit and Encroachment Permit for five "small cell" wireless communications facilities mounted on existing or replacement PG&E utility poles in the right of way of the R-1 zoning district ("2019 Applications"). The proposed sites (also known as "Nodes") for the five facilities are depicted on Exhibit A attached to the Agreement and are identified as follows:

Site 1:    San Antonio 1 NW of 10th
Site 2:    San Antonio 3 SE of 13th
Site 3:    10th 1 NW of Dolores
Site 4:    Lincoln NE of 12th
Site 5:    Mission 2 SW of 12th

On June 12, 2019, the City Planning Commission denied the 2019 Applications. The Planning Commission adopted Findings for Decision in support of its denial of the 2019 Applications.

On June 26, 2019, Verizon Wireless filed an appeal to the City Council of the denial by the City Planning Commission ("Appeal").

On September 10, 2019 there was a hearing before the City Council on the Appeal by Verizon Wireless. After consideration of the Staff Report, the presentation by City staff and the comments from the

representatives of Verizon Wireless and the public, the City Council voted to deny the Appeal ("Denial")

Verizon Wireless contends, among other things, that Chapter 17.46 of the City Municipal Code is preempted by Federal and State law.  However, to accommodate the concerns of the City, Verizon Wireless intends to submit new applications to the City for the alternative sites subject to the terms of this Agreement ("New Applications")

Within eight (8) months of the effective date of the proposed  Agreement attached to this Staff Report Verizon Wireless agrees to submit the New Applications for the Project based on its attempted redesign of the network. Verizon Wireless would be entitled under the Agreement to a one-time, six (6) month extension of this time period in the event of extenuating circumstances, regulatory delays, or other events beyond Verizon Wireless's control.

Each of the New Applications shall be completed in accordance with the locations depicted in Exhibit B to the Agreement and identified in the chart below:

|  | Original Location | New Location |
|---|---|---|
| Node 1 | San Antonio 1 NW of 10th | Relocated to Carmello Street between 8th and 9th Avenues with battery back-up, only if the City will approve battery back-up, subject to the limitations in Section 2(b) in the Agreement |
| Node 2 | San Antonio 3 SE of 13th | Relocated to a location in the County's jurisdiction |
| Node 3 | 10th 1 NW of Dolores | Replaced by a rooftop facility on the City's Sunset Center with battery back-up, subject to the limitations in Section 1(c)(viii) in the Agreement |
| Node 4 | Lincoln 3 NE of 12th | Replaced by a rooftop facility on the City's Sunset Center with battery back-up, subject to the limitations in Section 1(c)(viii) in the Agreement |
| Node 5 | Mission 2 SW of 12th | Relocated to a location in the County's jurisdiction |

The Agreement includes additional terms relating to the proposed New Applications including the terms for a Lease of the rooftop of the Sunset Center which will contain Nodes 3 and 4 for the sum of $1000 per month.

Nodes 2 and 5 are proposed to be relocated to the County's jurisdiction.    If PG&E or the County do not approve this relocation, then Verizon has reserved the right in the Agreement to reapply to the City for Nodes 2 and 5 to be located in the City at the original locations which would be subject to approval by the City.

Node 1 on Carmello Street would be located on PG&E facilities.  If PG&E does not approve Node 1, then then Verizon has reserved the right in the Agreement to reapply to the City for Node 1 to be located in the

City at the original location which would be subject to approval by the City.

All three Nodes proposed for the City (one on Carmello and two on Sunset Center rooftop) will have battery backup subject to the provisions included in the Agreement in Section 2(b) for Carmello and Section 1(c) for Sunset Center.

## FISCAL IMPACT:

No direct fiscal impact for this action.

## PRIOR CITY COUNCIL ACTION:

On September 10, 2019 City Council denied the Appeal by Verizon Wireless from the Planning Commission decision which denied the 2019 Applications by Verizon Wireless.

## ATTACHMENTS:

Attachment #1 - Resolution 2020-071 Verizon Wireless Small Cell Facilities Agreement
Attachment #2 - Verizon Wireless Small Cell Facilities Agreement
Attachment #3 - Exhibits to Verizon Wireless Small Cell Facilities Agreement

**CITY OF CARMEL-BY-THE-SEA**
**CITY COUNCIL**

**RESOLUTION NO. 2020-071**

**A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF CARMEL-BY-THE-SEA AUTHORIZING THE CITY ADMINISTRATOR TO EXECUTE AN AGREEMENT REGARDING VERIZON WIRELESS SMALL CELL FACILITIES**

WHEREAS, on March 27, 2019, Verizon Wireless submitted applications for Design Review, Use Permit and Encroachment Permit for five "small cell" wireless communications facilities mounted on existing or replacement PG&E utility poles in the right of way of the R-1 zoning district ("2019 Applications"). The proposed sites (also known as "Nodes") for the five facilities are depicted on Exhibit A attached hereto and are identified as follows:

Site 1:       San Antonio 1 NW of 10th

Site 2:       San Antonio 3 SE of 13th

Site 3:       10th 1 NW of Dolores

Site 4:       Lincoln NE of 12th

Site 5:       Mission 2 SW of 12th

WHEREAS, on June 12, 2019, the City Planning Commission denied the 2019 Applications. The Planning Commission adopted Findings for Decision in support of its denial of the 2019 Applications.

WHEREAS, On June 26, 2019, Verizon Wireless filed an appeal to the City Council of the denial by the City Planning Commission ("Appeal").

WHEREAS, On September 10, 2019 there was a hearing before the City Council on the Appeal by Verizon Wireless. After consideration of the Staff Report, the presentation by City staff and the comments from the representatives of Verizon Wireless and the public, the City Council voted to deny the Appeal ("Denial").

WHEREAS, Verizon Wireless contends, among other things, that the City should have approved the 2019 Applications and further that the City Municipal Code is preempted by Federal and State law. However, in the interest of providing alternative sites to minimize the impact of the facilities to the City and its residents, Verizon Wireless intends to submit new applications to the City for alternative sites subject to the terms of this Agreement ("New Applications").

WHEREAS, on October 6, 2020, there was presented to the City Council for consideration an Agreement Regarding Verizon Wireless Small Cell Facilities.

**NOW THEREFORE, BE IT RESOLVED THAT THE CITY COUNCIL OF THE CITY OF CARMEL-BY-THE-SEA DOES HEREBY:**

Authorize the City Administrator to execute an Agreement Regarding Verizon Wireless Small Cell Facilities and to execute the Letter of Authorization attached as Exhibit "C" to the Agreement.

Resolution 2020-071
Page 2

       **PASSED AND ADOPTED BY THE CITY COUNCIL OF THE CITY OF CARMEL-BY-THE-SEA this 6th day of October, 2020, by the following vote:**

AYES:

NOES:

ABSENT:

ABSTAIN:


APPROVED:                 ATTEST:


_____
Dave Potter                  Britt Avrit, MMC
Mayor                        City Clerk

## AGREEMENT REGARDING VERIZON WIRELESS SMALL CELL FACILITIES

This Agreement ("Agreement") is made and entered into between GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership d/b/a VERIZON WIRELESS ("Verizon Wireless"), and CARMEL-BY-THE-SEA, a California municipal corporation ("City") to agree on an entitlement path for certain small cell wireless facilities in the City.  Verizon Wireless and City are referred to herein individually as a "Party" and collectively as the "Parties."  The Agreement shall be effective as of date specified in Section 19.

<u>Recitals</u>

The Parties enter into this Agreement based on the following facts:

A.       On March 27, 2019, Verizon Wireless submitted applications for Design Review, Use Permit and Encroachment Permit for five "small cell" wireless communications facilities mounted on existing or replacement PG&E utility poles in the right of way of the R-1 zoning district ("2019 Applications").  The proposed sites (also known as "Nodes") for the five facilities are depicted on the map attached as <u>Exhibit A</u>, identified as the following locations:

Site 1:  San Antonio 1 NW of 10th

Site 2:  San Antonio 3 SE of 13th

Site 3:  10th 1 NW of Dolores

Site 4:  Lincoln NE of 12th

Site 5:  Mission 2 SW of 12th

B.       On June 12, 2019, the City Planning Commission denied the 2019 Applications.  The Planning Commission adopted Findings for Decision in support of its denial of the 2019 Applications.

C.       On June 26, 2019, Verizon Wireless filed an appeal to the City Council of the denial by the City Planning Commission ("Appeal").

D.       On September 10, 2019 there was a hearing before the City Council on the Appeal by Verizon Wireless.  After consideration of the Staff Report, the presentation by City staff and the comments from the representatives of Verizon Wireless and the public, the City Council voted to deny the Appeal ("Denial").

E.       Verizon Wireless contends, among other things, that Chapter 17.46 of the City Municipal Code is preempted by Federal and State law.

F.       To accommodate the concerns of the City, Verizon Wireless intends to submit new applications to the City for the alternative sites subject to the terms of this Agreement ("New Applications")

<u>Agreement</u>

In consideration of the execution of this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and subject to the terms and conditions hereof, the Parties hereby agree that the foregoing Recitals are true and correct and said Recitals are hereby incorporated by this reference and the Parties further agree as follows:

1. **Application Process**

   a. <u>Locations</u>: Within eight (8) months of the effective date of this Agreement, Verizon Wireless agrees to submit New Applications for the Project based on its attempted redesign of the network. Verizon Wireless is entitled to a one-time, six (6) month extension of this time period in the event of extenuating circumstances, regulatory delays, or other events beyond Verizon Wireless's control.  Each of the New Applications shall be completed in accordance with the locations depicted in <u>Exhibit B</u> and identified in the chart below:

| | **Original Location** | **New Location** |
|---|---|---|
| Node 1 | San Antonio 1 NW of 10th | Relocated to Carmello Street between 8th and 9th Avenues with battery back-up, only if the City will approve battery back-up, subject to the limitations in Section 2(b) |
| Node 2 | San Antonio 3 SE of 13th | Relocated to a location in the County's jurisdiction |
| Node 3 | 10th 1 NW of Dolores | Replaced by a rooftop facility on the City's Sunset Center with battery back-up, subject to the limitations in Section 1(c)(viii) below |
| Node 4 | Lincoln 3 NE of 12th | Replaced by a rooftop facility on the City's Sunset Center with battery back-up, subject to the limitations in Section 1(c)(viii) below |
| Node 5 | Mission 2 SW of 12th | Relocated to a location in the County's jurisdiction |

   b. Verizon Wireless will submit applications for Nodes 1 and 3 and 4 to the City, and Nodes 2 and 5 to the County.

   c. <u>Sunset Center Lease</u>: The City agrees to consider signing a lease ("Lease") with Verizon Wireless for a rooftop facility on the City's Sunset Center.
      i. The City agrees to execute a letter of authorization, attached as <u>Exhibit C, simultaneously with this Agreement</u>.
      ii. The Lease, if approved by the City Council, will be fully executed by the Parties within six (6) months of the effective date of this Agreement.
      iii. The City agrees to timely and diligently provide documents to Verizon Wireless, upon its request, in the interest of signing the Lease. .
      iv. The initial Lease  rate will be $1,000 per month for a Lease term of five (5)

2

years with a minimum of four (4) subsequent options for five (5) years each, for a total of no less than twenty-five (25) years.

v.   The final Lease will be substantially similar to Verizon Wireless's lease form, attached as <u>Exhibit</u> D without material modifications.

vi.   The Lease shall include provisions that do not require the City's approval as the landlord for modification of the facility.

vii.   Verizon Wireless agrees to design the Sunset Center facility to comply with eligible facilities request requirements under 47 U.S.C. § 1455(a), and the City agrees to process the permit as an eligible facilities request.  The City's request for battery back-up shall not remove the application from consideration as an eligible facilities request.

viii.  The site will include battery back-up, as requested by the City, provided the batteries are approved by the City and not used for grounds to deny the New Application.  In the event that the battery back-up could be used as a ground for denial, Verizon Wireless reserves the right to remove the battery back-up from the New Application.

ix.   The City will be responsible for the cost of any structural improvements to the Sunset Center required for the City's preferred design for battery back-up.

x.   Verizon Wireless's obligation to pay rent shall commence upon the first day of the month after Verizon Wireless begins installation of the wireless equipment of all four sites in Section 1(a).

xi.   If the City does not approve the proposed Lease consistent with the provisions herein, then Verizon Wireless reserves the right to reapply ("Reapplication for Nodes 3 and 4) to the City for original locations for Nodes 3 and 4.  If the City does not approve the Reapplication for Nodes 3 and 4,  then Verizon Wireless reserves all its rights including, but not limited, the right to challenge the denial of either the 2019 Applications or Reapplications for Nodes 3 and 4 by filing an action in state or federal court.

d.   <u>Notice to City</u>: Verizon Wireless will determine the schedule for submitting the new applications for Node 1 and the Sunset Center facility and advise the City of a proposed submittal date at least seven (7) days in advance of submitting an application subject to this Agreement.

e.   <u>Permit Fees</u>: Verizon Wireless will pay the required permit fees for the applications.

f.   <u>Federal Shot Clock Time Periods</u>: The City understands that Verizon Wireless will strictly enforce the 60-day shot clock periods established by the Federal Communications Commission ("FCC").

g.   <u>PG&E, County, or Coastal Commission Denial</u>:

i.   In the event that either PG&E or the County do not approve the New Applications for Nodes 2 and/or 5 ("Disapproval"), the City agrees to

3

consider a revision to its wireless ordinance to comply with federal and state law within six (6) months of Verizon Wireless providing written notice to the City of that Disapproval.  Verizon Wireless shall reapply ("Reapplication for Nodes 2 and 5") to the City for approval of the original location within 30 days of the Disapproval, following steps 1(d) through 1(f) and Sections 2 and 3 of this Agreement.   If the City does not approve the Reapplication for Nodes 2 and 5, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge the denial of the 2019 Applications, New Applications, or Reapplications for Nodes 2 and 5 by filing an action in state or federal court.

ii.  In the event that PG&E does not approve the New Application for Node 1 ("Disapproval"), Verizon Wireless shall reapply for an alternate location acceptable to PG&E, within 60 days of that Disapproval.  If that location falls back within the City's jurisdiction, Verizon Wireless shall provide written notice to the City of PG&E's Disapproval and reapply ("Reapplication for Node 1") for the original location within 60 days of that denial, following steps 1(d) through 1(f).  The City agrees to consider a revision to its wireless ordinance to comply with federal and state law within six (6) months of receiving Verizon Wireless's written notice.  If the City does not approve the Reapplication for Node 1, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge the denial of the 2019 Application, New Application, or Reapplication for Node 1 by filing an action in state or federal court.

iii.  In the event that the Coastal Commission does not approve any application that is appealed to it, Verizon Wireless shall reapply ("Reapplication Due to Coastal Commission Non-Approval") for the original location within 60 days of that denial, following steps 2(a) through 2(d).  If the City does not approve the Reapplication Due to Coastal Commission Non-Approval, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge any denial by filing an action in state or federal court.

2.    **Small Cell Designs and Locations**

a.  Each of the New Applications  will substantially reflect either the pole-top antenna with pole-mounted equipment design (attached as Exhibit E, shown without battery back-up power) or the rooftop facility design (attached as Exhibit F) (collectively, the "Designs").

b.  The New Applications under the City's jurisdiction will include battery back-up, as requested by the City, provided the batteries are approved and are not used for grounds to deny the New Application.  In the event that the battery back-up could be used as a ground for denial, Verizon Wireless reserves the right to remove the battery back-up from any New Application.

4

**3.      Timely Consideration of Applications**

      a.  The City shall take final action on each application in strict compliance with FCC shot clock periods unless Verizon Wireless agrees to toll the shot clock. The City can make no guarantee or assurances that it will approve the applications. However, the Parties agree that an approval or denial of the applications will have the impacts on the Parties' respective rights described in this Agreement.

      b.  In the event the City fails to take final action on the applications within the timeline specified in Section 3(a), then the application shall be deemed approved by operation of law.

      c.  After the City approves any of the applications, either explicitly or by operation of law, it will issue any required subsequent approvals for the wireless facilities, including encroachment permits, within ten (10) days after Verizon Wireless submits any required application.

**4.      Tolling of Statute of Limitations**

The Parties agree to extend the statute of limitations for Verizon Wireless to file an action pursuant to the federal Telecommunications Act to a date six months following the last final action taken by the City in connection with all of the proposed applications by Verizon Wireless as described in this Agreement.

**5.      Release of Claims**

In the event the City takes final action to approve each of the applications and reapplications, if any, within the time limits set forth under Section 3, above, and approves the Lease described in Section 1 of this Agreement, Verizon Wireless agrees to execute a release all claims ("Release") against the City related to the Denial, in a form subject to approval by the City Attorney, within twenty (20) days after the City takes final action to approve the last of the applications.

 Effective upon the execution of the Release by Verizon Wireless,  each Party hereby releases the other Party from all other claims, demands, actions and causes of action of any nature which are currently known regarding the Denial, as well as all claims, demands, actions and causes of action regarding such matters that the Parties do not know or suspect to exist in its favor as of the date of this Agreement, which, if known at the time of executing this Agreement, might have affected the Agreement as set forth herein and each of the Parties also hereby specifically waives the protections of California Civil Code section 1542, which provides:

    A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her, would have materially affected his or her settlement with the debtor or released party.

**6.      Exceptions to Release**

Notwithstanding Section 8 above, nothing in this Agreement shall be construed as a release by any Party of (i) any obligation or claim arising out of a breach of this Agreement; or (ii) any obligation or

claim arising out of any future application to install or modify any wireless telecommunications facility; or (iii) any challenge to the City's regulations applicable to wireless communication facilities as applied to any future application, other than the applications subject to this Agreement.

### 7.    Termination of Agreement

This Agreement shall terminate automatically and have no further legal effect in the event the City takes final action to deny any of the applications. In addition, Verizon Wireless shall have the right to terminate this Agreement by written notice to the City if the City approves any of the applications with conditions that are not reasonably acceptable to Verizon Wireless. Verizon Wireless agrees that within fifteen (15) days after it receives written notice of approval, it shall give written notice to the City specifying which conditions of approval are not reasonably acceptable.  In its discretion, the City may schedule a future agenda item to discuss the concerns of Verizon Wireless.  If the matter cannot be resolved to the Parties' satisfaction, then the approval shall be considered a denial for the purposes of this Agreement.

### 8.    Effect of Agreement

It is understood and agreed that this Agreement is the compromise of disputed claims. Therefore, the terms of this Agreement are not to be construed as an admission of liability on the part of the City, which expressly denies any such liability, or as an admission by Verizon Wireless of the validity of any defense by the City or the legality of the City's Denial. This Agreement is entered into solely for the purposes of settling disputed claims. The terms of this Agreement shall not be admissible in any arbitration, litigation, or other proceedings for any purpose, except as required to enforce this Agreement.

### 9.    Binding on Successors and Assigns

This Agreement shall inure to the benefit of and bind and be binding upon the managing agents, shareholders, officers, directors, agents, employees, attorneys, heirs, successors, partners and assigns of the undersigned Parties.

### 10.    Advice of Counsel

Each of the Parties to this Agreement represents and warrants that it has engaged separate counsel to represent it with respect to this Agreement and all matters covered herein, that it has been fully advised by said attorneys with respect to its rights and with respect to the execution of this Agreement and as to all matters which are subject to the mutual releases contained herein, and that it has read this Agreement and understands the terms thereof.

### 11.    Attorneys' Fees and Costs

The Parties agree to bear their own attorneys' fees and costs in connection with the preparation and negotiation of this Agreement, as well as any fees and costs incurred in the Lawsuit.

### 12.    Complete Agreement

This Agreement constitutes the entire, full and complete Agreement between the Parties hereto, and supersedes all prior agreements, if any.

**13.    Enforcement**

In the event of a breach of the terms of this Agreement, any action to enforce this Agreement shall be brought in the United States District Court for the Northern District of California. The terms of this Agreement shall be interpreted, enforced and governed under the laws of the State of California (excluding California's choice of law rules). This Agreement is the result of negotiations between the Parties, each of which has participated in the drafting hereof. The prevailing Party in any action or proceeding to enforce this Agreement shall be entitled to recover their attorneys' fees in enforcing their rights under this Agreement.

**14.    Execution of Documents**

The Parties agree to execute any and all documents reasonably necessary to effectuate the terms, conditions, and purposes of this Agreement.

**15.    Warranty of Authority**

In executing this Agreement, each person executing this Agreement further represents and warrants that they have the authority to bind their respective entities, and that those Party-entities have the right and authority to compromise, settle, release and discharge all of the claims released herein. Execution of this Agreement by the City Administrator shall be deemed to evidence legally proper approval by the City Council of this Agreement as a binding obligation of the City.

**16.    Written Modifications Only**

The terms of this Agreement shall not be modified or amended except in writing, signed by all Parties or their designated representatives for such purpose.

**17.    Time is of the Essence**

Time is of the essence in this Agreement.

**18.    Counterparts**

This Agreement may be executed in counterparts, which when taken together shall constitute one binding Agreement. Scanned and facsimile signatures shall be considered as binding as original signatures.

**19.    Effective Date of Agreement**

This Agreement shall be deemed effective when it has been executed by both Verizon Wireless and the City, and as of the date the last party signed it.

**20.    Severability**

If one or more of the provisions of this Agreement is determined to be illegal or unenforceable, the remainder of this Agreement shall not be affected. Each remaining provision or portion thereof shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

7

**GTE MOBILNET OF CALIFORNIA LIMITED
PARTNERSHIP dba VERIZON WIRELESS**

       **CARMEL-BY-THE-SEA**

By: _____

Printed name: Shannon Champion

Its: Pacific Market General Counsel

Date: _____

By: _____

Printed Name: Chip Rerig

Title: City Administrator

Date: _____

# Map of Five Original Proposed Locations



## Map of New Locations



# Letter of Authorization

### APPLICATION FOR ZONING/LAND USE ENTITLEMENTS

<div style="border:1px solid black; padding:8px;">

**Exhibit C**

**Property Address:**    San Carlos Street at Ninth Avenue, Carmel-By-The-Sea, CA 93923

**Assessor's Parcel Number:**    010-151-001-000 & 010-143-001-000

</div>

City of Carmel-by-the-Sea, the owner(s) of the above-described property, authorize GTE Mobilnet of California Limited Partnership, d/b/a Verizon Wireless, with offices located at 2785 Mitchell Drive, Walnut Creek, CA  94598, its employees, representatives, agents, and/or consultants, to create, file and/or manage  any land use and building permit applications, or any other entitlements necessary to construct and operate a wireless communications facility on the above-described property.

By: _____
       Signature

Print Name:  Chip Rerig _____

Title:  City Administrator _____

Date: _____

SITE NAME:
SITE NUMBER:
ATTY/DATE

## BUILDING AND ROOFTOP LEASE AGREEMENT

This Building and Rooftop Lease Agreement (the "Agreement") made this _____ day of _
_____, 20__, between _____, with its principal offices located at _____
_____, hereinafter designated LESSOR and _____
d/b/a Verizon Wireless with its principal offices at One Verizon Way, Mail Stop 4AW100, Basking Ridge,
New Jersey 07920 (telephone number 866-862-4404), hereinafter designated LESSEE.  LESSOR and LESSEE
are at times collectively referred to hereinafter as the "Parties" or individually as the "Party."

WITNESSETH

In consideration of the mutual covenants contained herein and intending to be legally bound
hereby, the Parties hereto agree as follows:

1.       GRANT.  In accordance with this Agreement, LESSOR hereby grants to LESSEE the right to
install, maintain and operate communications equipment ("Use") in and/or upon that certain building or
facility owned, leased or controlled by LESSOR at _____**[INSERT COMMON ADDRESS]**
(the "Property").  The Property is legally described on Exhibit "A" attached hereto and made a part hereof.
LESSEE's communications equipment will be installed on a portion of the Property consisting of
approximately ___ square feet of floor space in the building ("Interior Space") and approximately ___
square feet of rooftop space on the building ("Rooftop Space") (collectively, the "Premises").   The
Premises are shown in detail on Exhibit "B" attached hereto and made a part hereof.

2.       INITIAL TERM.   This Agreement shall be effective as of the date of execution by both
Parties ("Effective Date").  The initial term of the Agreement shall be for 5 years beginning on the first day
of the month following the Commencement Date (as hereinafter defined).  The "Commencement Date"
shall be the first day of the month after LESSEE begins installation of LESSEE's communications equipment
and will be acknowledged by the Parties in writing, including electronic mail.

3.       EXTENSIONS.  This Agreement shall automatically be extended for 4 additional 5 year
terms unless Lessee terminates it at the end of the then current term by giving LESSOR written notice of
the intent to terminate at least 3 months prior to the end of the then current term.  The initial term and
all extensions shall be collectively referred to herein as the "Term".

4.       RENTAL.

a.   Rental payments shall begin on the Commencement Date and be due at a total
annual rental of $_____, to be paid in equal monthly installments on the first day of the month, in
advance, to LESSOR at_____ **[Address]** or to such other person, firm, or place as LESSOR
may, from time to time, designate in writing at least 30 days in advance of any rental payment date by
notice given in accordance with Paragraph 23 below.  LESSOR and LESSEE acknowledge and agree that the
initial rental payment shall not be delivered by LESSEE until 60 days after the Commencement Date.  Upon
agreement of the Parties, LESSEE may pay rent by electronic funds transfer and in such event, LESSOR
agrees to provide to LESSEE bank routing information for such purpose upon request of Lessee.

b. For any party to whom rental payments are to be made, LESSOR or any successor in interest of LESSOR hereby agrees to provide to LESSE (i) a completed, current version of Internal Revenue Service Form W-9, or equivalent; (ii) complete and fully executed state and local withholding forms if required; and (iii) other documentation to verify LESSOR's or such other party's right to receive rental as is reasonably requested by LESSEE. Rental shall accrue in accordance with this Agreement, but LESSEE shall have no obligation to deliver rental payments until the requested documentation has been received by LESSEE. Upon receipt of the requested documentation, LESSEE shall deliver the accrued rental payments as directed by LESSOR.

5. <u>ACCESS</u>. LESSEE shall have the non-exclusive right of ingress and egress from a public right-of-way, 7 days a week, 24 hours a day, over the Property to and from the Premises for the purpose of installation, operation and maintenance of LESSEE's communications equipment. Without limitation, the Premises may include certain space within the building, on the roof of the building or elsewhere on the building sufficient for the installation, operation and maintenance of communications equipment. Notwithstanding anything to the contrary, the Premises shall include (1) such additional space necessary for the installation, operation and maintenance of wires, cables, conduits and pipes running between and among the various portions of the Premises and to all necessary electrical, telephone, fiber and other similar support services located within the Property or the nearest public right of way, and (2) such additional space sufficient for LESSEE's radio frequency signage and/or barricades as are necessary to ensure LESSEE's compliance with Laws (as defined in Paragraph 30). In the event it is necessary, LESSOR agrees to grant LESSEE or the provider the right to install such services on, through, over and/or under the Property, provided the location of such services shall be reasonably approved by LESSOR.

6. <u>CONDITION OF PROPERTY</u>. LESSOR shall deliver the Premises to LESSEE in a condition ready for LESSEE's Use and clean and free of debris. LESSOR represents and warrants to LESSEE that as of the Effective Date, the structure of the building (including without limitation the roof, foundations, exterior walls), the common areas and all building systems (including, without limitation, the plumbing, electrical, ventilating, air conditioning, heating, and loading doors, if any) are (a) in good operating condition and free of any leakage; (b) in compliance with all Laws; and (c) in compliance with all EH&S Laws (as defined in Paragraph 27).

7. <u>ELECTRICAL</u>.

a. If permitted by the local utility company serving the Premises, LESSEE shall furnish and install an electrical meter at the Premises for the measurement of electrical power used by LESSEE at the Premises and LESSEE shall pay the utility company directly.

b. If an electrical meter is not permitted, then LESSEE may furnish and install an electrical sub-meter at the Premises for the measurement of electrical power used by LESSEE at the Premises and shall pay the utility company directly if permitted by the utility company.

c. In the event a sub-meter is installed and the utility company will not permit LESSEE to pay the utility company directly, then the LESSOR shall read LESSEE's sub-meter on a monthly basis and provide LESSEE with an invoice for LESSEE's power consumption on an annual basis. Each invoice shall reflect charges only for LESSEE's power consumption based on the average kilowatt hour rate actually paid by LESSOR to the utility, without markup or profit.

d. All invoices for power consumption shall be sent by LESSOR to LESSEE at Verizon Wireless, M/S 3846, P.O. Box 2375, Spokane, WA 99210-2375, and shall be provided to LESSEE within 90

days following the conclusion of each calendar year (otherwise, LESSOR waives the right to collect applicable electrical charges).  Upon written request from LESSEE, LESSOR shall provide copies of electricity bills received by LESSOR during any period that LESSOR submits invoices to LESSEE for reimbursement and for that same period LESSOR shall provide documentation of the sub-meter readings applicable to such periods.  LESSEE shall pay each invoice within 45 calendar days after receipt of the invoice from LESSOR.

   e.  LESSEE shall be permitted to install, maintain and/or provide access to and use of, as necessary (during any power interruption at the Premises), a temporary power source, and all related equipment and appurtenances within the Premises, or elsewhere on the Property in such locations as reasonably approved by LESSOR.  LESSEE shall have the right to install conduits connecting the temporary power source and related appurtenances to the Premises.

  8. <u>IMPROVEMENTS</u>.  The communications equipment including, without limitation, antennas, conduits, and other improvements shall be at LESSEE's expense and installation shall be at the discretion and option of LESSEE.  LESSEE shall have the right to replace, repair, add or otherwise modify its communications equipment, antennas, conduits or other improvements or any portion thereof and the frequencies over which the communications equipment operates, at no additional cost, whether or not any of the communications equipment, antennas, conduits or other improvements are listed on any exhibit.  LESSEE shall only be required to obtain LESSOR consent for modifications that require structural upgrades to the roof or that materially increase LESSEE's Premises, provided increases in total Rooftop Space of 10% or less shall not be considered material.  LESSOR shall respond in writing to any LESSEE consent request within thirty (30) days of receipt or LESSOR's consent shall be deemed granted, provided, any material increase to the Interior Space shall be memorialized by the Parties in writing.  LESSOR is not entitled to a rent increase associated with any LESSEE modification unless it is expanding its Interior Space or materially increasing its Rooftop Space, in which case, any rent increase shall be proportionate to the additional space included in the Premises description.

  9. <u>GOVERNMENT APPROVALS</u>.  LESSEE's Use is contingent upon LESSEE obtaining all of the certificates, permits and other approvals (collectively the "Government Approvals") that may be required by any Federal, State or Local authorities (collectively, the "Government Entities") as well as a satisfactory structural analysis of the building or other structure that will permit LESSEE's Use.  LESSOR shall cooperate with LESSEE in its effort to obtain such approvals and shall take no action which would adversely affect the status of the Property with respect to LESSEE's Use.

  10. <u>TERMINATION</u>.  LESSEE may, unless otherwise stated, immediately terminate this Agreement upon written notice to LESSOR in the event that (i) any applications for such Government Approvals should be finally rejected; (ii) any Government Approval issued to LESSEE is canceled, expires, lapses or is otherwise withdrawn or terminated by any Government Entity; (iii) LESSEE determines that such Government Approvals may not be obtained in a timely manner; (iv) LESSEE determines any structural analysis is unsatisfactory; (v) LESSEE, in its sole discretion, determines the Use of the Premises is obsolete or unnecessary; (vii) with 3 months prior notice to LESSOR, upon the annual anniversary of the Commencement Date; or (viii) at any time before the Commencement Date for any reason or no reason in LESSEE's sole discretion.

  11. <u>MAINTENANCE</u>.  LESSEE will maintain LESSEE's communications equipment within the Premises in good condition, reasonable wear and tear and casualty damage excepted.  LESSOR shall maintain, in good operating condition and repair, the structural elements of the building and the Premises,

and all building systems (including, but not limited to, the foundations, exterior walls, structural condition of interior bearing walls, exterior roof, fire sprinkler and/or standpipe and hose or other automatic fire extinguishing system, fire hydrants, parking lots, walkways, parkways, driveways, landscaping, fences, signs and utility systems serving the common areas) and the common areas.

12.    INDEMNIFICATION.  Subject to Paragraph 13, each Party shall indemnify and hold the other harmless against any claim of liability or loss from personal injury or property damage resulting from or arising out of the negligence or willful misconduct of the indemnify Party, its employees, contractors or agents, except to the extent such claims or damages may be due to or caused by the negligence or willful misconduct of the other Party, or its employees, contractors or agents.  The indemnified Party will provide the indemnifying Party with prompt, written notice of any claim covered by this indemnification; provided that any failure of the indemnified Party to provide any such notice, or to provide it promptly, shall not relieve the indemnifying Party from its indemnification obligation in respect of such claim, expect to the extent the indemnifying Party can establish actual prejudice and direct damages as a result thereof. The indemnified Party will cooperate appropriately with the indemnifying Party in connection with the indemnifying Party's defense of such claim.  The indemnifying Party shall defend any indemnified Party, at the indemnified Party's request, against any claim with counsel reasonably satisfactory to the indemnified Party.  The indemnifying Party shall not settle or compromise any such claim or consent to the entry of any judgment without the prior written consent of each indemnified Party and without an unconditional release of all claims by each claimant or plaintiff in favor of each indemnified Party.

13.    INSURANCE.  The Parties agree to maintain during the term of this Agreement the following insurance policies:

a.    Commercial general liability on an occurrence form in the amount of $2,000,000.00 per occurrence and $4,000,000.00 in the annual aggregate for bodily injury and property damage.  Each party shall be included as an additional insured on the other party's insurance policy.

b.    "All-Risk" property insurance on a replacement cost basis insuring their respective property with no coinsurance requirement.  Where legally permissible, each party agrees to waive subrogation against the other party and to ensure said waiver is recognized by the insurance policies insuring the property.

14.    LIMITATION OF LIABILITY.  Except for indemnification pursuant to Paragraphs 12 and 27, a violation of Paragraph 32, or a violation of law, neither Party shall be liable to the other, or any of their respective agents, representatives, employees for any lost revenue, lost profits, loss of technology, rights or services, incidental, punitive, indirect, special or consequential damages, loss of data, or interruption or loss of use of service, even if advised of the possibility of such damages, whether under theory of contract, tort (including negligence), strict liability or otherwise.

15.    INTERFERENCE.

a. LESSEE agrees that LESSEE will not cause interference that is measurable in accordance with industry standards to LESSOR's equipment.  LESSOR agrees that LESSOR and other occupants of the Property will not cause interference that is measurable in accordance with industry standards to the then existing equipment of LESSEE.

b. Without limiting any other rights or remedies, if interference occurs and continues for a period in excess of 48 hours following notice to the interfering party via telephone to LESSEE'S Network

Operations Center (at (800) 224-6620/(800) 621-2622) or to LESSOR at (_____), the interfering party shall or shall require any other user to reduce power or cease operations of the interfering equipment until the interference is cured.

        c. The Parties acknowledge that there will not be an adequate remedy at law for noncompliance with the provisions of this Paragraph and therefore the Parties shall have the right to equitable remedies such as, without limitation, injunctive relief and specific performance.

       16.    <u>REMOVAL AT END OF TERM</u>. Upon expiration or within 90 days of earlier termination, LESSEE shall remove LESSEE's Communications Equipment and restore the Premises to its original condition, reasonable wear and tear and casualty damage excepted. LESSOR agrees and acknowledges that the communications equipment shall remain the personal property of LESSEE and LESSEE shall have the right to remove the same at any time during the Term, whether or not said items are considered fixtures and attachments to real property under applicable laws. If such time for removal causes LESSEE to remain on the Premises after termination of the Agreement, LESSEE shall pay rent at the then existing monthly rate or on the existing monthly pro-rata basis if based upon a longer payment term, until the removal of the communications equipment is completed.

       17.    <u>HOLDOVER</u>. If upon expiration of the Term the Parties are negotiating a new lease or a lease extension, then this Agreement shall continue during such negotiations on a month to month basis at the rental in effect as of the date of the expiration of the Term. In the event that the Parties are not in the process of negotiating a new lease or lease extension and LESSEE holds over after the expiration or earlier termination of the Term, then Lessee shall pay rent at the then existing monthly rate or on the existing monthly pro-rata basis if based upon a longer payment term, until the removal of the communications equipment is completed rental.

       18.    <u>RIGHT OF FIRST REFUSAL</u>. If at any time after the Effective Date, LESSOR receives an offer or letter of intent from any person or entity that is in the business of owning, managing or operating communications facilities or is in the business of acquiring landlord interests in agreements relating to communications facilities, to purchase fee title, an easement, a lease, a license, or any other interest in the Premises or any portion thereof or to acquire any interest in this Agreement, or an option for any of the foregoing, LESSOR shall provide written notice to LESSEE of said offer ("LESSOR's Notice"). LESSOR's Notice shall include the prospective buyer's name, the purchase price being offered, any other consideration being offered, the other terms and conditions of the offer, a description of the portion of and interest in the Premises and/or this Agreement which will be conveyed in the proposed transaction, and a copy of any letters of intent or form agreements presented to LESSOR by the third party offeror. LESSEE shall have the right of first refusal to meet any bona fide offer of sale or transfer on the terms and conditions of such offer or by effectuating a transaction with substantially equivalent financial terms. If LESSEE fails to provide written notice to LESSOR that LESSEE intends to meet such bona fide offer within thirty (30) days after receipt of LESSOR's Notice, LESSOR may proceed with the proposed transaction in accordance with the terms and conditions of such third party offer, in which event this Agreement shall continue in full force and effect and the right of first refusal described in this paragraph shall survive any such conveyance to a third party. If LESSEE provides LESSOR with notice of LESSEE's intention to meet the third party offer within thirty (30) days after receipt of LESSOR's Notice, then if LESSOR's Notice describes a transaction involving greater space than the Premises, LESSEE may elect to proceed with a transaction covering only the Premises and the purchase price shall be prorated on a square footage basis. Further, LESSOR acknowledges and agrees that if LESSEE exercises this right of first refusal, LESSEE may require a reasonable period of time to conduct due diligence and effectuate the closing of a transaction on

substantially equivalent financial terms of the third party offer. LESSEE may elect to amend this Agreement to effectuate the proposed financial terms of the third party offer rather than acquiring fee simple title or an easement interest in the Premises. For purposes of this Paragraph, any transfer, bequest or devise of LESSOR's interest in the Property as a result of the death of LESSOR, whether by will or intestate succession, or any conveyance to LESSOR's family members by direct conveyance or by conveyance to a trust for the benefit of family members shall not be considered a sale for which LESSEE has any right of first refusal.

19.    RIGHTS UPON SALE.  Should LESSOR, at any time during the Term, decide (i) to sell or otherwise transfer all or any part of the Property, or (ii) to grant to a third party by easement or other legal instrument an interest in and to any portion of the Premises, such sale, transfer, or grant of an easement or interest therein shall be under and subject to this Agreement and any such purchaser or transferee shall recognize LESSEE's rights hereunder. In the event that LESSOR completes any such sale, transfer, or grant described in this paragraph without executing an assignment of the Agreement whereby the third party agrees in writing to assume all obligations of LESSOR under this Agreement, then LESSOR shall not be released from its obligations to LESSEE under this Agreement, and LESSEE shall have the right to look to LESSOR and the third party for the full performance of the Agreement.

20.    LESSOR'S TITLE.  LESSOR covenants that LESSEE, on paying the rent and performing the covenants herein, shall peaceably and quietly have, hold and enjoy the Premises.  LESSOR represents and warrants to LESSEE as of the Effective Date and covenants during the Term that LESSOR has full authority to enter into and execute this Agreement and that there are no liens, judgments, covenants, easements, restrictions or other impediments of title that will adversely affect LESSEE's Use.

21.    ASSIGNMENT.  Without any approval or consent of the other Party, this Agreement may be sold, assigned or transferred by either Party to (i) any entity in which the Party directly or indirectly holds an equity or similar interest; (ii) any entity which directly or indirectly holds an equity or similar interest in the Party; or (iii) any entity directly or indirectly under common control with the Party.  LESSEE may assign this Agreement to any entity which acquires all or substantially all of LESSEE's assets in the market defined by the FCC in which the Property is located by reason of a merger, acquisition or other business reorganization without approval or consent of LESSOR.  As to other parties, this Agreement may not be sold, assigned or transferred without the written consent of the other Party, which such consent will not be unreasonably withheld, delayed or conditioned.  No change of stock ownership, partnership interest or control of LESSEE or transfer upon partnership or corporate dissolution of either Party shall constitute an assignment hereunder.

22.    RELOCATION.

In the event LESSOR desires to replace, relocate, modify, demolish, or in any way alter the Property in any manner likely to cause interference (as described in Paragraph 15) with the operation of LESSEE's communications equipment (each event, a "Project"), LESSOR shall have the right to cause LESSEE to temporarily or permanently relocate the communications equipment and/or utilities, as the case may be, subject to the terms and conditions set forth herein; provided, however, LESSOR shall accommodate LESSEE's continued uninterrupted use of temporary communications equipment throughout the Project. If LESSOR's Project requires Licensee to temporarily or permanently relocate its communications equipment from the Premises, LESSOR shall have the right to require LESSEE to relocate the communications equipment upon the following terms and conditions: (i) LESSOR shall deliver to LESSEE Notice of its Project, in accordance with Paragraph 23 below, at least one year in advance, unless the

Project is necessary to preserve the integrity and functionality of the Property, in which case the Parties may agree to a lesser notice period in writing; (ii) LESSOR shall identify a suitable alternate location on the Property ("Alternate Premises") that provides substantially similar signal coverage for the communications equipment as that of the Premises being relocated; (iii) unless the necessity for the Project results from the negligence or willful misconduct of LESSEE, all costs associated with such relocation will be performed exclusively by and at no cost to the LESSEE; and (iv) LESSEE must follow the jurisdiction's review and permitting requirements before installing the communications equipment at the Alternate Premises.  LESSEE shall not be required to pay any additional application, review or other fees in connection with any relocation initiated by LESSOR.

23.    NOTICES.  Except for notices permitted via telephone in accordance with Paragraph 15 and notices permitted via electronic mail in accordance with Paragraph 2,  all notices hereunder must be in writing and shall be deemed validly given if sent by certified mail, return receipt requested or by commercial courier, provided the courier's regular business is delivery service and provided further that it guarantees delivery to the addressee by the end of the next business day following the courier's receipt from the sender, addressed as follows (or any other address that the Party to be notified may have designated to the sender by like notice):


LESSOR:


LESSEE: _____
                        d/b/a Verizon Wireless
                        180 Washington Valley Road
                        Bedminster, New Jersey 07921
                        Attention: Network Real Estate

Notice shall be effective upon actual receipt or refusal as shown on the receipt obtained pursuant to the foregoing.

24.    SUBORDINATION AND NON-DISTURBANCE.  Within 15 days of the Effective Date, LESSOR shall obtain a Non-Disturbance Agreement, as defined below, from its existing mortgagee(s), ground lessors and master lessors, if any, of the Property.  At LESSOR's option, this Agreement shall be subordinate to any future master lease, ground lease, mortgage, deed of trust or other security interest (a "Mortgage") by LESSOR which from time to time may encumber all or part of the Property; provided, however, as a condition precedent to LESSEE being required to subordinate its interest in this Agreement to any future Mortgage covering the building, LESSOR shall obtain for LESSEE's benefit a non-disturbance and attornment agreement for LESSEE's benefit in the form reasonably satisfactory to LESSEE, and containing the terms described below (the "Non-Disturbance Agreement"), and shall recognize LESSEE's rights under this Agreement.  The Non-Disturbance Agreement shall include the encumbering party's ("Lender's") agreement that, if Lender or its successor-in-interest or any purchaser of Lender's or its successor's interest (a "Purchaser") acquires an ownership interest in the building, Lender or such successor-in-interest or Purchaser will  honor all of the terms of the Agreement.  Such Non-Disturbance Agreement must be binding on all of Lender's participants in the subject loan (if any) and on all successors and assigns of Lender and/or its participants and on all Purchasers.  In return for such Non-Disturbance Agreement, LESSEE will execute an agreement for Lender's benefit in which LESSEE (1) confirms that the

Agreement is subordinate to the Mortgage or other real property interest in favor of Lender, (2) agrees to attorn to Lender if Lender becomes the owner of the building and (3) agrees to accept a cure by Lender of any of LESSOR's defaults, provided such cure is completed within the deadline applicable to LESSOR. In the event LESSOR defaults in the payment and/or other performance of any mortgage or other real property interest encumbering the Property, LESSEE, may, at its sole option and without obligation, cure or correct LESSOR's default and upon doing so, LESSEE shall be subrogated to any and all rights, titles, liens and equities of the holders of such mortgage or other real property interest and LESSEE shall be entitled to deduct and setoff against all rents that may otherwise become due under this Agreement the sums paid by LESSEE to cure or correct such defaults.

25.    DEFAULT.  It is a "Default" if (i) either Party fails to comply with this Agreement and does not remedy the failure within 30 days after written notice by the other Party or, if the failure cannot reasonably be remedied in such time, if the failing Party does not commence a remedy within the allotted 30 days and diligently pursue the cure to completion within 90 days after the initial written notice, or (ii) LESSOR fails to comply with this Agreement and the failure interferes with LESSEE's Use and LESSOR does not remedy the failure within 5 days after written notice from LESSEE or, if the failure cannot reasonably be remedied in such time, if LESSOR does not commence a remedy within the allotted 5 days and diligently pursue the cure to completion within 15 days after the initial written notice.  The cure periods set forth in this Paragraph 25 do not extend the period of time in which either Party has to cure interference pursuant to Paragraph 15 of this Agreement.

26.    REMEDIES.  In the event of a Default, without limiting the non-defaulting Party in the exercise of any right or remedy which the non-defaulting Party may have by reason of such default, the non-defaulting Party may terminate this Agreement and/or pursue any remedy now or hereafter available to the non-defaulting Party under the Laws or judicial decisions of the state in which the Property is located.  Further, upon a Default, the non-defaulting Party may at its option (but without obligation to do so), perform the defaulting Party's duty or obligation.  The costs and expenses of any such performance by the non-defaulting Party shall be due and payable by the defaulting Party upon invoice therefor.  If LESSEE undertakes any such performance on LESSOR's behalf and LESSOR does not pay LESSEE the full undisputed amount within 30 days of its receipt of an invoice setting forth the amount due, LESSEE may offset the full undisputed amount due against all fees due and owing to LESSOR under this Agreement until the full undisputed amount is fully reimbursed to LESSEE.

27.    ENVIRONMENTAL.  LESSEE shall conduct its business in compliance with all applicable laws governing the protection of the environment or employee health and safety ("EH&S Laws").  LESSEE shall indemnify and hold harmless the LESSOR from claims to the extent resulting from LESSEE's violation of any applicable EH&S Laws or to the extent that LESSEE causes a release of any regulated substance to the environment. LESSOR shall indemnify and hold harmless LESSEE from all claims resulting from the violation of any applicable EH&S Laws or a release of any regulated substance to the environment except to the extent resulting from the activities of LESSEE.  The Parties recognize that LESSEE is only leasing a small portion of LESSOR's property and that LESSEE shall not be responsible for any environmental condition or issue except to the extent resulting from LESSEE's specific activities and responsibilities. In the event that LESSEE encounters any hazardous substances that do not result from its activities, LESSEE may relocate its facilities to avoid such hazardous substances to a mutually agreeable location or, if LESSEE desires to remove at its own cost all or some the hazardous substances or materials (such as soil) containing those hazardous substances, LESSOR agrees to sign any necessary waste manifest associated with the removal, transportation and/or disposal of such substances.

28.  <u>CASUALTY</u>.  If a fire or other casualty damages the Property or the Premises and impairs LESSEE's Use, rent shall abate until LESSEE'S Use is restored.  If LESSEE's Use is not restored within 45 days, LESSEE may terminate this Agreement.

29.  <u>CONDEMNATION</u>.  If a condemnation of any portion of the Property or Premises impairs LESSEE's Use, Lessee may terminate this Agreement.  LESSEE may on its own behalf make a claim in any condemnation proceeding involving the Premises for losses related to LESSEE's communications equipment, relocation costs and, specifically excluding loss of LESSEE's leasehold interest, any other damages LESSEE may incur as a result of any such condemnation.

30.  <u>APPLICABLE LAWS</u>.  During the Term, LESSOR shall maintain the Property in compliance with all applicable laws, EH&S Laws, rules, regulations, ordinances, directives, covenants, easements, consent decrees, zoning and land use regulations, and restrictions of record, permits, building codes, and the requirements of any applicable fire insurance underwriter or rating bureau, now in effect or which may hereafter come into effect (including, without limitation, the Americans with Disabilities Act and laws regulating hazardous substances) (collectively "Laws").  LESSEE shall, in respect to the condition of the Premises and at LESSEE's sole cost and expense, comply with (i) all Laws relating solely to LESSEE's specific and unique nature of use of the Premises; and (ii) all building codes requiring modifications to the Premises due to the improvements being made by LESSEE in the Premises.  It shall be LESSOR's obligation to comply with all Laws relating to the Property, without regard to specific use (including, without limitation, modifications required to enable LESSEE to obtain all necessary building permits).

31.  <u>TAXES</u>.

a.  LESSOR shall invoice and LESSEE shall pay any applicable transaction tax (including sales, use, gross receipts, or excise tax) imposed on the LESSEE and required to be collected by the LESSOR based on any service, rental space, or equipment provided by the LESSOR to the LESSEE.  LESSEE shall pay all personal property taxes, fees, assessments, or other taxes and charges imposed by any Government Entity that are imposed on the LESSEE and required to be paid by the LESSEE that are directly attributable to the LESSEE's equipment or LESSEE's use and occupancy of the Premises. Payment shall be made by LESSEE within 60 days after presentation of a received bill and/or assessment notice which is the basis for such taxes or charges.  LESSOR shall pay all ad valorem, personal property, real estate, sales and use taxes, fees, assessments or other taxes or charges that are attributable to LESSOR's Property or any portion thereof imposed by any Government Entity.

b.  LESSEE shall have the right, at its sole option and at its sole cost and expense, to appeal, challenge or seek modification of any tax assessment or billing for which LESSEE is wholly or partly responsible for payment.  LESSOR shall reasonably cooperate with LESSEE at LESSEE's expense in filing, prosecuting and perfecting any appeal or challenge to taxes as set forth in the preceding sentence, including but not limited to, executing any consent, appeal or other similar document.  In the event that as a result of any appeal or challenge by LESSEE, there is a reduction, credit or repayment received by the LESSOR for any taxes previously paid by LESSEE, LESSOR agrees to promptly reimburse to LESSEE the amount of said reduction, credit or repayment.  In the event that LESSEE does not have the standing rights to pursue a good faith and reasonable dispute of any taxes under this paragraph, LESSOR will pursue such dispute at LESSEE's sole cost and expense upon written request of LESSEE.

32.  <u>NON-DISCLOSURE</u>. The Parties agree this Agreement and any information exchanged between the Parties regarding the Agreement are confidential.  The Parties agree not to provide copies

of this Agreement or any other confidential information to any third party without the prior written consent of the other or as required by law.  If a disclosure is required by law, prior to disclosure, the Party shall notify the other Party and cooperate to take lawful steps to resist, narrow, or eliminate the need for that disclosure.

33.   <u>MOST FAVORED LESSEE</u>.  LESSOR represents and warrants that the rent, benefits and terms and conditions granted to LESSEE by LESSOR hereunder are now and shall be, during the Term, no less favorable than the rent, benefits and terms and conditions for substantially the same or similar tenancies or licenses granted by LESSOR to other parties.  If at any time during the Term LESSOR shall offer more favorable rent, benefits or terms and conditions for substantially the same or similar tenancies or licenses as those granted hereunder, then LESSOR shall, within 30 days after the effective date of such offering, notify LESSEE of such fact and offer LESSEE the more favorable offering.  If LESSE chooses, the parties shall then enter into an amendment that shall be effective retroactively to the effective date of the more favorable offering, and shall provide the same rent, benefits or terms and conditions to LESSEE. LESSEE shall have the right to decline to accept the offering.  LESSOR's compliance with this requirement shall be subject, at LESSEE's option, to independent verification.

34.   <u>MISCELLANEOUS</u>. This Agreement contains all agreements, promises and understandings between the LESSOR and the LESSEE regarding this transaction, and no oral agreement, promises or understandings shall be binding upon either the LESSOR or the LESSEE in any dispute, controversy or proceeding.  This Agreement may not be amended or varied except in a writing signed by all Parties.  This Agreement shall extend to and bind the heirs, personal representatives, successors and assigns hereto. The failure of either party to insist upon strict performance of any of the terms or conditions of this Agreement or to exercise any of its rights hereunder shall not waive such rights and such party shall have the right to enforce such rights at any time.  The performance of this Agreement shall be governed, interpreted, construed and regulated by the laws of the state in which the Premises is located without reference to its choice of law rules. Except as expressly set forth in this Agreement, nothing in this Agreement shall grant, suggest or imply any authority for one Party to use the name, trademarks, service marks or trade names of the other for any purpose whatsoever.   LESSOR agrees to execute a Memorandum of this Agreement, which LESSEE may record with the appropriate recording officer.  The provisions of the Agreement relating to indemnification from one Party to the other Party shall survive any termination or expiration of this Agreement.

[Signature page follows.  The remainder of this page is intentionally blank.]

Attachment 3

IN WITNESS WHEREOF, the Parties hereto have set their hands and affixed their respective seals the day and year first above written.

**LESSOR:**

_____          By:_____

WITNESS          Its:_____

_____          Date: _____


**LESSEE:**

_____          By:_____

WITNESS          Its: _____

_____          Date:_____

Attachment 3

**EXHIBIT "A"**

**DESCRIPTION OF PROPERTY**

Attachment 3

**EXHIBIT "B"**

**SITE PLAN OF PREMISES**





**SOUTH CARMEL SUNSET CENTER**
San Carlos Street  Carmel  CA  93923



View 1



LOCATION
©2020 Google Maps



EXISTING



PROPOSED CANISTER ANTENNA

PROPOSED    LOOKING EAST FROM SAN CARLOS STREET

ACCURACY OF PHOTO SIMULATION BASED UPON INFORMATION PROVIDED BY PROJECT APPLICANT.



# SOUTH CARMEL SUNSET CENTER

San Carlos Street   Carmel   CA   93923



AEsims.com
877.9AE.sims

View 2



Location                                    ©2020 Google Maps



Existing



PROPOSED CANISTER ANTENNA

Proposed    Looking northeast from 10th Avenue

Accuracy of photo simulation based upon information provided by project applicant.



## SOUTH CARMEL SUNSET CENTER

San Carlos Street   Carmel   CA   93923



View 3



Location                    ©2020 Google Maps



Existing



PROPOSED CANISTER ANTENNA

Proposed    Looking southeast from San Carlos Street

Accuracy of photo simulation based upon information provided by project applicant.

EXHIBIT 2

**CITY OF CARMEL-BY-THE-SEA**
**CITY COUNCIL**

**RESOLUTION NO. 2020-071**

**A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF CARMEL-BY-THE-SEA AUTHORIZING THE CITY ADMINISTRATOR TO EXECUTE AN AGREEMENT REGARDING VERIZON WIRELESS SMALL CELL FACILITIES**

WHEREAS, on March 27, 2019, Verizon Wireless submitted applications for Design Review, Use Permit and Encroachment Permit for five "small cell" wireless communications facilities mounted on existing or replacement PG&E utility poles in the right of way of the R-1 zoning district ("2019 Applications"). The proposed sites (also known as "Nodes") for the five facilities are depicted on Exhibit A attached hereto and are identified as follows:

Site 1:      San Antonio 1 NW of 10th

Site 2:      San Antonio 3 SE of 13th

Site 3:      10th 1 NW of Dolores

Site 4:      Lincoln NE of 12th

Site 5:      Mission 2 SW of 12th

WHEREAS, on June 12, 2019, the City Planning Commission denied the 2019 Applications. The Planning Commission adopted Findings for Decision in support of its denial of the 2019 Applications.

WHEREAS, On June 26, 2019, Verizon Wireless filed an appeal to the City Council of the denial by the City Planning Commission ("Appeal").

WHEREAS, On September 10, 2019 there was a hearing before the City Council on the Appeal by Verizon Wireless. After consideration of the Staff Report, the presentation by City staff and the comments from the representatives of Verizon Wireless and the public, the City Council voted to deny the Appeal ("Denial").

WHEREAS, Verizon Wireless contends, among other things, that the City should have approved the 2019 Applications and further that the City Municipal Code is preempted by Federal and State law. However, in the interest of providing alternative sites to minimize the impact of the facilities to the City and its residents, Verizon Wireless intends to submit new applications to the City for alternative sites subject to the terms of this Agreement ("New Applications").

WHEREAS, on October 6, 2020, there was presented to the City Council for consideration an Agreement Regarding Verizon Wireless Small Cell Facilities.

**NOW THEREFORE, BE IT RESOLVED THAT THE CITY COUNCIL OF THE CITY OF CARMEL-BY-THE-SEA DOES HEREBY:**

Authorize the City Administrator to execute an Agreement Regarding Verizon Wireless Small Cell Facilities and to execute the Letter of Authorization attached as Exhibit "C" to the Agreement.

Resolution 2020-071
Page 2

**PASSED AND ADOPTED BY THE CITY COUNCIL OF THE CITY OF CARMEL-BY-THE-SEA this 6th day of October, 2020, by the following vote:**

AYES:          COUNCIL MEMBERS BARON, THEIS, MAYOR PRO TEM RICHARDS; MAYOR POTTER

NOES:          NONE

ABSENT:      NONE

RECUSED:    COUNCIL MEMBER REIMERS

APPROVED:                                    ATTEST:

_____              _____
Dave Potter                                     Britt Avrit, MMC
Mayor                                             City Clerk

Attachment 2

## AGREEMENT REGARDING VERIZON WIRELESS SMALL CELL FACILITIES

This Agreement ("Agreement") is made and entered into between GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership d/b/a VERIZON WIRELESS ("Verizon Wireless"), and CARMEL-BY-THE-SEA, a California municipal corporation ("City") to agree on an entitlement path for certain small cell wireless facilities in the City.  Verizon Wireless and City are referred to herein individually as a "Party" and collectively as the "Parties."  The Agreement shall be effective as of date specified in Section 19.

<u>Recitals</u>

The Parties enter into this Agreement based on the following facts:

A.      On March 27, 2019, Verizon Wireless submitted applications for Design Review, Use Permit and Encroachment Permit for five "small cell" wireless communications facilities mounted on existing or replacement PG&E utility poles in the right of way of the R-1 zoning district ("2019 Applications").  The proposed sites (also known as "Nodes") for the five facilities are depicted on the map attached as <u>Exhibit A</u>, identified as the following locations:

Site 1:  San Antonio 1 NW of 10th

Site 2:  San Antonio 3 SE of 13th

Site 3:  10th 1 NW of Dolores

Site 4:  Lincoln NE of 12th

Site 5:  Mission 2 SW of 12th

B.      On June 12, 2019, the City Planning Commission denied the 2019 Applications.  The Planning Commission adopted Findings for Decision in support of its denial of the 2019 Applications.

C.      On June 26, 2019, Verizon Wireless filed an appeal to the City Council of the denial by the City Planning Commission ("Appeal").

D.      On September 10, 2019 there was a hearing before the City Council on the Appeal by Verizon Wireless.  After consideration of the Staff Report, the presentation by City staff and the comments from the representatives of Verizon Wireless and the public, the City Council voted to deny the Appeal ("Denial").

E.      Verizon Wireless contends, among other things, that Chapter 17.46 of the City Municipal Code is preempted by Federal and State law.

F.      To accommodate the concerns of the City, Verizon Wireless intends to submit new applications to the City for the alternative sites subject to the terms of this Agreement ("New Applications")

1

Attachment 2

<u>Agreement</u>

In consideration of the execution of this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and subject to the terms and conditions hereof, the Parties hereby agree that the foregoing Recitals are true and correct and said Recitals are hereby incorporated by this reference and the Parties further agree as follows:

1.    **Application Process**

    a.  <u>Locations</u>: Within eight (8) months of the effective date of this Agreement, Verizon Wireless agrees to submit New Applications for the Project based on its attempted redesign of the network. Verizon Wireless is entitled to a one-time, six (6) month extension of this time period in the event of extenuating circumstances, regulatory delays, or other events beyond Verizon Wireless's control.  Each of the New Applications shall be completed in accordance with the locations depicted in <u>Exhibit B</u> and identified in the chart below:

|   | **Original Location** | **New Location** |
|---|---|---|
| Node 1 | San Antonio 1 NW of 10th | Relocated to Carmello Street between 8th and 9th Avenues with battery back-up, only if the City will approve battery back-up, subject to the limitations in Section 2(b) |
| Node 2 | San Antonio 3 SE of 13th | Relocated to a location in the County's jurisdiction |
| Node 3 | 10th 1 NW of Dolores | Replaced by a rooftop facility on the City's Sunset Center with battery back-up, subject to the limitations in Section 1(c)(viii) below |
| Node 4 | Lincoln 3 NE of 12th | Replaced by a rooftop facility on the City's Sunset Center with battery back-up, subject to the limitations in Section 1(c)(viii) below |
| Node 5 | Mission 2 SW of 12th | Relocated to a location in the County's jurisdiction |

    b.  Verizon Wireless will submit applications for Nodes 1 and 3 and 4 to the City, and Nodes 2 and 5 to the County.

    c.  <u>Sunset Center Lease</u>: The City agrees to consider signing a lease ("Lease") with Verizon Wireless for a rooftop facility on the City's Sunset Center.

        i.  The City agrees to execute a letter of authorization, attached as <u>Exhibit C, simultaneously with this Agreement</u>.

        ii.  The Lease, if approved by the City Council, will be fully executed by the Parties within six (6) months of the effective date of this Agreement.

        iii.  The City agrees to timely and diligently provide documents to Verizon Wireless, upon its request, in the interest of signing the Lease. .

        iv.  The initial Lease  rate will be $1,000 per month for a Lease term of five (5)

2

years with a minimum of four (4) subsequent options for five (5) years each, for a total of no less than twenty-five (25) years.

v.   The final Lease will be substantially similar to Verizon Wireless's lease form, attached as Exhibit D without material modifications.

vi.  The Lease shall include provisions that do not require the City's approval as the landlord for modification of the facility.

vii. Verizon Wireless agrees to design the Sunset Center facility to comply with eligible facilities request requirements under 47 U.S.C. § 1455(a), and the City agrees to process the permit as an eligible facilities request. The City's request for battery back-up shall not remove the application from consideration as an eligible facilities request.

viii. The site will include battery back-up, as requested by the City, provided the batteries are approved by the City and not used for grounds to deny the New Application. In the event that the battery back-up could be used as a ground for denial, Verizon Wireless reserves the right to remove the battery back-up from the New Application.

ix.  The City will be responsible for the cost of any structural improvements to the Sunset Center required for the City's preferred design for battery back-up.

x.   Verizon Wireless's obligation to pay rent shall commence upon the first day of the month after Verizon Wireless begins installation of the wireless equipment of all four sites in Section 1(a).

xi.  If the City does not approve the proposed Lease consistent with the provisions herein, then Verizon Wireless reserves the right to reapply ("Reapplication for Nodes 3 and 4") to the City for original locations for Nodes 3 and 4. If the City does not approve the Reapplication for Nodes 3 and 4, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge the denial of either the 2019 Applications or Reapplications for Nodes 3 and 4 by filing an action in state or federal court.

d.  Notice to City: Verizon Wireless will determine the schedule for submitting the new applications for Node 1 and the Sunset Center facility and advise the City of a proposed submittal date at least seven (7) days in advance of submitting an application subject to this Agreement.

e.  Permit Fees: Verizon Wireless will pay the required permit fees for the applications.

f.  Federal Shot Clock Time Periods: The City understands that Verizon Wireless will strictly enforce the 60-day shot clock periods established by the Federal Communications Commission ("FCC").

g.  PG&E, County, or Coastal Commission Denial:

i.   In the event that either PG&E or the County do not approve the New Applications for Nodes 2 and/or 5 ("Disapproval"), the City agrees to

3

consider a revision to its wireless ordinance to comply with federal and state law within six (6) months of Verizon Wireless providing written notice to the City of that Disapproval. Verizon Wireless shall reapply ("Reapplication for Nodes 2 and 5") to the City for approval of the original location within 30 days of the Disapproval, following steps 1(d) through 1(f) and Sections 2 and 3 of this Agreement. If the City does not approve the Reapplication for Nodes 2 and 5, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge the denial of the 2019 Applications, New Applications, or Reapplications for Nodes 2 and 5 by filing an action in state or federal court.

ii.  In the event that PG&E does not approve the New Application for Node 1 ("Disapproval"), Verizon Wireless shall reapply for an alternate location acceptable to PG&E, within 60 days of that Disapproval. If that location falls back within the City's jurisdiction, Verizon Wireless shall provide written notice to the City of PG&E's Disapproval and reapply ("Reapplication for Node 1") for the original location within 60 days of that denial, following steps 1(d) through 1(f). The City agrees to consider a revision to its wireless ordinance to comply with federal and state law within six (6) months of receiving Verizon Wireless's written notice. If the City does not approve the Reapplication for Node 1, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge the denial of the 2019 Application, New Application, or Reapplication for Node 1 by filing an action in state or federal court.

iii. In the event that the Coastal Commission does not approve any application that is appealed to it, Verizon Wireless shall reapply ("Reapplication Due to Coastal Commission Non-Approval") for the original location within 60 days of that denial, following steps 2(a) through 2(d). If the City does not approve the Reapplication Due to Coastal Commission Non-Approval, then Verizon Wireless reserves all its rights including, but not limited, the right to challenge any denial by filing an action in state or federal court.

2.    **Small Cell Designs and Locations**

a.  Each of the New Applications will substantially reflect either the pole-top antenna with pole-mounted equipment design (attached as Exhibit E, shown without battery back-up power) or the rooftop facility design (attached as Exhibit F) (collectively, the "Designs").

b.  The New Applications under the City's jurisdiction will include battery back-up, as requested by the City, provided the batteries are approved and are not used for grounds to deny the New Application. In the event that the battery back-up could be used as a ground for denial, Verizon Wireless reserves the right to remove the battery back-up from any New Application.

4

3.    **Timely Consideration of Applications**

   a.  The City shall take final action on each application in strict compliance with FCC shot clock periods unless Verizon Wireless agrees to toll the shot clock. The City can make no guarantee or assurances that it will approve the applications. However, the Parties agree that an approval or denial of the applications will have the impacts on the Parties' respective rights described in this Agreement.

   b.  In the event the City fails to take final action on the applications within the timeline specified in Section 3(a), then the application shall be deemed approved by operation of law.

   c.  After the City approves any of the applications, either explicitly or by operation of law, it will issue any required subsequent approvals for the wireless facilities, including encroachment permits, within ten (10) days after Verizon Wireless submits any required application.

4.    **Tolling of Statute of Limitations**

The Parties agree to extend the statute of limitations for Verizon Wireless to file an action pursuant to the federal Telecommunications Act to a date six months following the last final action taken by the City in connection with all of the proposed applications by Verizon Wireless as described in this Agreement.

5.    **Release of Claims**

In the event the City takes final action to approve each of the applications and reapplications, if any, within the time limits set forth under Section 3, above, and approves the Lease described in Section 1 of this Agreement, Verizon Wireless agrees to execute a release all claims ("Release") against the City related to the Denial, in a form subject to approval by the City Attorney, within twenty (20) days after the City takes final action to approve the last of the applications.

Effective upon the execution of the Release by Verizon Wireless, each Party hereby releases the other Party from all other claims, demands, actions and causes of action of any nature which are currently known regarding the Denial, as well as all claims, demands, actions and causes of action regarding such matters that the Parties do not know or suspect to exist in its favor as of the date of this Agreement, which, if known at the time of executing this Agreement, might have affected the Agreement as set forth herein and each of the Parties also hereby specifically waives the protections of California Civil Code section 1542, which provides:

   A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.    **Exceptions to Release**

Notwithstanding Section 8 above, nothing in this Agreement shall be construed as a release by any Party of (i) any obligation or claim arising out of a breach of this Agreement; or (ii) any obligation or

claim arising out of any future application to install or modify any wireless telecommunications facility; or (iii) any challenge to the City's regulations applicable to wireless communication facilities as applied to any future application, other than the applications subject to this Agreement.

**7.      Termination of Agreement**

This Agreement shall terminate automatically and have no further legal effect in the event the City takes final action to deny any of the applications. In addition, Verizon Wireless shall have the right to terminate this Agreement by written notice to the City if the City approves any of the applications with conditions that are not reasonably acceptable to Verizon Wireless. Verizon Wireless agrees that within fifteen (15) days after it receives written notice of approval, it shall give written notice to the City specifying which conditions of approval are not reasonably acceptable.  In its discretion, the City may schedule a future agenda item to discuss the concerns of Verizon Wireless.  If the matter cannot be resolved to the Parties' satisfaction, then the approval shall be considered a denial for the purposes of this Agreement.

**8.      Effect of Agreement**

It is understood and agreed that this Agreement is the compromise of disputed claims. Therefore, the terms of this Agreement are not to be construed as an admission of liability on the part of the City, which expressly denies any such liability, or as an admission by Verizon Wireless of the validity of any defense by the City or the legality of the City's Denial. This Agreement is entered into solely for the purposes of settling disputed claims. The terms of this Agreement shall not be admissible in any arbitration, litigation, or other proceedings for any purpose, except as required to enforce this Agreement.

**9.      Binding on Successors and Assigns**

This Agreement shall inure to the benefit of and bind and be binding upon the managing agents, shareholders, officers, directors, agents, employees, attorneys, heirs, successors, partners and assigns of the undersigned Parties.

**10.     Advice of Counsel**

Each of the Parties to this Agreement represents and warrants that it has engaged separate counsel to represent it with respect to this Agreement and all matters covered herein, that it has been fully advised by said attorneys with respect to its rights and with respect to the execution of this Agreement and as to all matters which are subject to the mutual releases contained herein, and that it has read this Agreement and understands the terms thereof.

**11.     Attorneys' Fees and Costs**

The Parties agree to bear their own attorneys' fees and costs in connection with the preparation and negotiation of this Agreement, as well as any fees and costs incurred in the Lawsuit.

**12.     Complete Agreement**

This Agreement constitutes the entire, full and complete Agreement between the Parties hereto, and supersedes all prior agreements, if any.

6

Attachment 2

### 13.    Enforcement

In the event of a breach of the terms of this Agreement, any action to enforce this Agreement shall be brought in the United States District Court for the Northern District of California. The terms of this Agreement shall be interpreted, enforced and governed under the laws of the State of California (excluding California's choice of law rules). This Agreement is the result of negotiations between the Parties, each of which has participated in the drafting hereof. The prevailing Party in any action or proceeding to enforce this Agreement shall be entitled to recover their attorneys' fees in enforcing their rights under this Agreement.

### 14.    Execution of Documents

The Parties agree to execute any and all documents reasonably necessary to effectuate the terms, conditions, and purposes of this Agreement.

### 15.    Warranty of Authority

In executing this Agreement, each person executing this Agreement further represents and warrants that they have the authority to bind their respective entities, and that those Party-entities have the right and authority to compromise, settle, release and discharge all of the claims released herein. Execution of this Agreement by the City Administrator shall be deemed to evidence legally proper approval by the City Council of this Agreement as a binding obligation of the City.

### 16.    Written Modifications Only

The terms of this Agreement shall not be modified or amended except in writing, signed by all Parties or their designated representatives for such purpose.

### 17.    Time is of the Essence

Time is of the essence in this Agreement.

### 18.    Counterparts

This Agreement may be executed in counterparts, which when taken together shall constitute one binding Agreement. Scanned and facsimile signatures shall be considered as binding as original signatures.

### 19.    Effective Date of Agreement

This Agreement shall be deemed effective when it has been executed by both Verizon Wireless and the City, and as of the date the last party signed it.

### 20.    Severability

If one or more of the provisions of this Agreement is determined to be illegal or unenforceable, the remainder of this Agreement shall not be affected. Each remaining provision or portion thereof shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

7

Attachment 2

**GTE MOBILNET OF CALIFORNIA LIMITED
PARTNERSHIP dba VERIZON WIRELESS**

By: _____

Printed name: Shannon Champion

Its: Pacific Market General Counsel

Date: ___10|28|20___

**CARMEL-BY-THE-SEA**

By: _____

Printed Name: Chip Rerig

Title: City Administrator

Date: ___11-2-2020___

8